IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

JOEL WHITMAN,

        Plaintiff,

v.

DCP MIDSTREAM, LLC, et al.,

        Defendants.

Case No. 22-CV-106-JFH-CDL

**OPINION AND ORDER**

This matter comes before the Court on the Motion to Compel Arbitration filed by Defendant, DCP Midstream, LLC ("DCP") [Dkt. No. 21], and the Motion to Compel Arbitration filed by Intervenor, Cypress Environmental Management-TIR, LLC ("Cypress") [Dkt. No. 28] (together, the "Motions to Compel"). DCP and Cypress seek a ruling from the Court compelling arbitration of the claims brought against DCP by Plaintiff Joel Whitman ("Whitman"). Dkt. Nos. 21, 28. For the reasons set forth herein, DCP and Cypress' Motions to Compel [Dkt. Nos. 21, 28] are **GRANTED**.

**BACKGROUND**

DCP is an oil and gas pipeline, storage, and transportation company. Dkt. No. 9 at 2. DCP contracts with Cypress to obtain pipeline inspection services, including field staffing provided by Cypress. Dkt. No. 21-2 at ¶ 5. Whitman was hired by Cypress to provide pipeline inspection services on Cypress' behalf to its customers from March 2017 to December 2019. Dkt. No. 21-2 at ¶ 6. One such customer was DCP. *Id*. at ¶¶ 5, 7. Cypress, not DCP, was Whitman's employer and, as such, Cypress determined and paid Whitman's salary. *Id*. at ¶¶ 6, 14, 27.

As a condition of his employment with Cypress, Whitman was required to enter into an Employment Agreement, which included an arbitration provision. *Id*. at ¶¶ 8-10. Specifically, the

arbitration provision stated that Whitman agreed to arbitrate "all claims that have arisen or will arise out of [his] employment," including "circumstances where a nonsignatory to [the] Employment Agreement (such as an individual, manager or the customer on whose project [Whitman] is assigned) is named as a defendant along with or instead of [Cypress]." *Id*. at 10.

Whitman brings this Fair Labor Standards Act lawsuit seeking to recover unpaid overtime wages he claims are owed to him by DCP.[1] Dkt. No. 1. Cypress intervened in this matter by agreement of the parties. Dkt. No. 23. DCP and Cypress assert that because Whitman's claims arise out of his employment with Cypress, Whitman's claims are subject to mandatory arbitration pursuant to the terms of his Employment Agreement. Dkt. No. 21-1 at 1-2; Dkt. No. 28 at 1-2. Specifically, DCP and Cypress assert that under the Federal Arbitration Act ("FAA"), the Employment Agreement here constitutes a valid agreement to arbitrate and, therefore, Whitman must be compelled to arbitration. Dkt. No. 21-2 at 2-6.

Whitman opposes arbitration arguing that 9 U.S.C. § 1 of the FAA specifically prohibits the Court from compelling arbitration because the present dispute involves "contracts of employment of . . . any [ ] class of workers engaged in foreign or interstate commerce." Dkt. No. 29 at 1 (citing 9 U.S.C. § 1). Whitman explains that while performing work for DCP, he "routinely traveled across state lines ensuring pipelines transporting oil and gas interstate operated safely and efficiently." *Id*. at 10-11. Whitman argues that his job description falls within the definition of "transportation worker," thereby excluding him from binding arbitration under 9 U.S.C. § 1. Notably, Whitman does not contest the validity of the Employment Agreement or arbitration provision, nor does he argue that his claims fall outside the scope of the arbitration provision. *See*

---

[1] This matter was initiated in the United States District Court for the District of Colorado and was transferred to this Court on March 7, 2022. Dkt. No. 53.

2

Dkt. No. 32 at ¶ 1 (stipulating that "the arbitration agreement [Whitman] entered into with [Cypress] is enforceable against him and others by DCP in all regards, so long as it is valid and enforceable under either the [FAA] or the applicable state arbitration act"]. Therefore, the Court will focus its analysis on the singular issue of whether 9 U.S.C. § 1 prohibits the Court from compelling Whitman's claims to arbitration under the circumstances presented in this case.

## STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, represents a strong public policy in favor of arbitration. *Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464, 465 (10th Cir. 1988); s*ee also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010); *Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009). Any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration. *Oil, Chem., & Atomic Workers Int'l Union, Local 2–124 v. American Oil Co.*, 528 F.2d 252, 254 (10th Cir. 1976); *see also Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983). However, arbitration is a contractual matter, and parties may not be required to submit to arbitration claims which they have not contractually agreed to submit. *AT & T Technologies, Inc. v. Commc'ns Workers*, 475 U.S. 643, 648 (1986); *see Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516 (10th Cir. 1995). Following, a claim will be compelled to arbitration only where a valid arbitration agreement exists and where the claim falls within the scope of that arbitration agreement. *See Coors Brewing Co.,* 51 F.3d at 1516. Again, the parties here agree that a valid arbitration agreement exists, and that Whitman's claims fall within the scope of that arbitration agreement. Dkt. No. 32.

## ANALYSIS

The FAA provides a limited exemption from the law's coverage to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or

interstate commerce." 9 U.S.C. § 1.  This section does not prohibit arbitration of all employment contracts, only those regarding the employment of "transportation workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 108 (2001).  Whitman argues that he qualifies as a transportation worker because he inspected pipelines for DCP, and those pipelines are used by DCP to transport oil and gas interstate.  Dkt. No. 29 at 9.  Cypress disagrees, arguing that Whitman's job is too tangential to the interstate movement of goods to qualify as a transportation worker under the 9 U.S.C. §1 exemption.  Dkt. No. 34 at 3-5.  This Court agrees.

The Tenth Circuit has adopted "a narrow construction of 9 U.S.C. § 1 to include only employees actually engaged in the channels of foreign or interstate commerce." *McWilliams v. Logicon, Inc.*, 143 F.3d 573, 575 (10th Cir. 1998).  The Tenth Circuit reasoned that this narrow construction "comports with both the text and history of the Federal Arbitration Act . . . [and] furthers the modern federal policy favoring arbitration." *Id*.  Under this narrow construction, even though an employer's products and services may affect interstate commerce, the § 1 exemption will not apply where the employee did not directly engage in the channels of interstate commerce. *Id*.  Various courts that have considered the issue have concluded that a transportation worker generally works in the transportation industry and directly engages in the movement of goods in interstate commerce or works so closely to the movement of goods in interstate commerce as to be in practical effect part of it.  *E.g., Int'l Bhd. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954, 957 (7th Cir. 2012) (holding that the union-plaintiff's workers were transportation workers because they transported loads of goods across state lines); *Lenz v. Yellow Tranps. Inc.*, 431 F.3d 348, 351-52 (8th Cir. 2005) (holding that a customer service representative, though working in trucking industry, was not actually involved in flow of goods in interstate commerce); *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 593 (3d Cir. 2004) (holding that the

plaintiff, a field service supervisor in Philadelphia for the defendant-shipping company, was a transportation worker because she supervised the delivery of goods in interstate commerce); *Harden v. Roadway Package Sys., Inc*., 249 F.3d 1137, 1140 (9th Cir. 2001) ("As a delivery driver for RPS, Harden contracted to deliver packages 'throughout the United States, with connecting international service.' Thus, he engaged in interstate commerce that is exempt from the FAA."); *see also Shankle v. B-G Maint. Mgmt. of Colo., Inc.,* 163 F.3d 1230, 1233 (10th Cir. 1999) (concluding that a janitor was not directly engaged in the channels of interstate commerce despite the employer's services "affect[ing] interstate commerce at some level").

      The Court agrees with Cypress that Whitman, a pipeline inspector, does not fall within the class of "transportation workers" covered under the FAA's exclusion. First, although DCP certainly transports oil and gas interstate, Whitman himself is not directly involved with the transportation. For example, Whitman's job responsibilities do not require him to directly handle the oil and gas product or require him to physically transport that product across state lines. *See e.g. Lenz*, 431 F.3d at 351-52. Whitman also does not supervise the transportation of the oil and gas product or direct other employees to do so. *Id*. Finally, while inconvenient, if Whitman and other pipeline inspectors went on strike, it would not necessarily halt or significantly disrupt interstate commerce. *Id*. Like a customer service representative or a janitor, a pipeline inspector is not directly engaged in the channels of interstate commerce to qualify for the 9 U.S.C. § 1 exception, despite his relation to interstate commerce at some level. *See Lenz,* 431 F.3d at 351-52; *Shankle,* 163 F.3d at 123.

Additionally, Whitman is employed by Cypress, not DCP. *See* Dkt. No. 21-3 at 2-4. Cypress provides inspection services to pipelines, plants, and related facilities.[2] Unlike DCP, Cypress' business does not directly deal in the flow of goods in interstate commerce. As an employee of Cypress, Whitman is even further removed from the "class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

For these reasons, the Court finds that the exception under 9 U.S.C. § 1 of the FAA does not apply in the present case. Therefore, the Court finds that the Motion to Compel Arbitration filed by Defendant, DCP Midstream, LLC [Dkt. No. 21], and the Motion to Compel Arbitration filed by Intervenor, Cypress Environmental Management-TIR, LLC [Dkt. No. 28], should be granted.[3]

## CONCLUSION

**IT IS THEREFORE ORDERED** that the Motion to Compel Arbitration filed by Defendant, DCP Midstream, LLC [Dkt. No. 21] and the Motion to Compel Arbitration filed by Intervenor, Cypress Environmental Management-TIR, LLC [Dkt. No. 28] are **GRANTED**.

**IT IS FURTHER ORDERED** that, pursuant to LCvR 41.1, the Court Clerk is directed to administratively close this case pending either an order of the Court reopening the action, or until this case is dismissed with prejudice by stipulation of the parties.

**IT IS FURTHER ORDERED** that the parties shall file a notice to the Court within fifteen (15) days of the completion of arbitration.

---

[2] *See* CYPRESS ENVIRONMENTAL PARTNERS, *Tulsa Inspection Resources*, https://www.cypressenvironmental.biz/business-units/Cypress-TIR/default.aspx (last visited May 5, 2022).

[3] As an aside, the Court also notes that although not dealing with the exception to binding arbitration under 9 U.S.C. § 1, a recent Tenth Circuit case held that an arbitration agreement was enforceable under nearly identical facts as presented here. *Reeves v. Enterprise Prods. Partners, LP*, 17 F.4th 1008 (10th Cir. 2021).

Dated this 3rd day of June 2022.

                                                JOHN F. HEIL, III
                                              UNITED STATES DISTRICT JUDGE